IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:07CR00030-001 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KEVIN J. WITASICK, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |
| | ) | |

Before me are the Defendant's three post-trial motions: Amended Motion For Acquittal

Or, In The Alternative, For A New Trial [Docket #226], Motion For New Trial Pursuant To

Federal Rule Of Criminal Procedure 33 [Docket #227], and Motion For Acquittal And/Or For A

New Trial On The Grounds Of A Constructive Amendment Of The Indictment And/Or Fatal

Variance [Docket #225]. The Government has filed a response [Docket #230] to the motions

and arguments contained therein, and the Defendant has filed a reply [Docket #235]. I have

reviewed the Defendant's legal arguments, the Government's response, and relevant legal

precedents.[1] For the reasons stated below, I will **DENY** the Defendant's motions. To

summarize my holding, based on the Rule 29 and Rule 33 standard of review, I find:

> A. The testimony of the Government witness Chuck Estes to be reasonably credible
> after impeachment inconsistencies were thoroughly examined during cross-
> examination at trial, thereby allowing a reasonable jury to properly weigh his
> credibility;

---

[1] The Government attempted to submit a clarifying brief [Docket #255], the Defendant attempted to submit a
supplementary affidavit [Docket #252] and a response to the Government's aforementioned brief [Docket # 256].
Although I informed counsel for both parties that supplementary material would be allowed, the materials submitted
do not complete, correct, or add to the existing motions before me. Rather, the parties have taken this opportunity to
present extra briefing materials under the title "supplementary." None of these documents contained newly
discovered evidence, but were cumulative, and therefore were not considered in my ruling because in the interests of
judicial efficiency, I informed both parties during the June 2, 2009 Status Conference [Docket #248] that the ability
to file briefing materials with the Court had ended.

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 1 of 26   Pageid#: 3234

B. No evidence other than the Defendant's bold speculations to support the allegation prosecutors lost / destroyed evidence or allowed perjured testimony to go uncorrected;

C. The Government presented sufficient evidence to lead a reasonable juror to find the Defendant guilty of tax evasion and tax perjury;

D. The Government presented sufficient evidence to lead a reasonable juror to find the Defendant guilty of failing to file a federal tax return;

E. Evidence presented to the jury regarding the dismissed <u>Klein</u> conspiracy did not prejudice the jury, and coupled with the deliberate ignorance instruction, the jury was properly instructed before deliberating; and

F. The indictment accurately performed its purpose without broadening or constituting a fatal variance of the charges returned by the Grand Jury.


**I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY**


This case concerns the use of the Witasick's Virginia mansion, named Stoneleigh, which housed a family of four and maintained bedrooms, nurseries, personal kitchen and dining rooms for personal use, while also serving as an office for the Defendant's law firm. (Trial Tr. Day 1, 112-13, Jan. 26, 2009.) Testimony was heard from various personal employees who worked for the Witasicks in capacities unrelated to the law firm, such as a nanny and groundskeeper. (Trial Tr. Day 2, 10, 36-37, Jan. 27, 2009.) These employees were not provided tax forms related to this employment, but were paid a salary by gift to avoid taxes. (Trial Tr. Day 2, 14, 38-39.)


*Pretrial*

On October 25, 2007, the Grand Jury in the Western District of Virginia returned a nine count Indictment naming Defendants Kevin and Whitney Witasick. [Docket # 14] Count One charged the Defendants jointly with conspiracy to commit tax perjury and tax evasion, as well as

2

defrauding the Department of Treasury, Internal Revenue Service and two insurance companies in violation of 18 U.S.C. § 371. Counts Two and Three charged the Defendants separately with tax evasion regarding their 1999 and 2000 tax years in violation of 26 U.S.C. § 7201. Counts Four and Five charged the Defendants separately with tax perjury in regards to filing their 1999 and 2000 tax returns in violation of 26 U.S.C. § 7206(1). Count Six and Seven charged the Defendants separately with failure to file a 2001 tax return in violation of 26 U.S.C. § 7203. Count Eight charged the Defendants jointly with the use of the mails in a scheme to defraud Standard Insurance in violation of 18 U.S.C. § 1341. Count Nine charged the Defendants jointly with committing health care fraud against Anthem Blue Cross Blue Shield in violation of 18 U.S.C. § 1347.

A motions hearing was held on April 24, 2008, where I entered several Orders, including a Severance Order resulting in the United States' decision to pursue Counts Two through Seven first (filing false tax returns, failing to file tax returns and evading their tax liability) and Count One (conspiracy relating to the Defendants' agreement to defraud the Internal Revenue Service). The trial on Counts One through Seven commenced on January 26, 2009, and the remaining Counts in the Indictment is set for trial on November 2, 2009.

*Trial*

At trial, the Government called Chuck Estes, a former accountant of the Witasicks. (Trial Tr. Day 2, 47, Jan. 27, 2009.) Estes served as the Witasick's accountant for many years and also prepared the payroll records for Kevin Witasick's law firm. (Trial Tr. Day 2, 79-80.) After the Government opened the door to Estes' professional background, the Defendant solicited testimony on cross-examination regarding Estes' probationary status with the Arizona Board of

3

Accounting, the possible adverse implications Estes' testimony would have on his CPA license, his expulsion from the American Institute for Certified Public Accountants, and thereby, thoroughly exposed Estes' possible bias. (Trial Tr. Day 2, 172-81.)

Estes testified that in October, 1999, when he was preparing the 1998 return, Mr. Witasick told him 75% of Stoneleigh was used for business. (Trial Tr. Day 2, 53, 185-87.) Michael Burghardt, an accountant formerly employed by Estes, testified Estes used the 75% number in order to figure the depreciation on business property; he took 75% of the purchase price of Stoneleigh and from then on, he carried that much of the purchase price of Stoneleigh on the books of the law firm as a business property. (Trial Tr. Day 3, 183-88, Jan. 28, 2009; Def. Ex. 42, 54.) Similarly, Estes testified he was told to deduct 100% for business in 2000 after explaining to Mr. Witasick the rules for computing a home office deduction – he said he told Mr. Witasick about the "exclusive use" rule – and that Mr. Witasick said he could justify 75% and then 100%. (Trial Tr. Day 2, 53-54, Jan. 27, 2009.)

Estes testified he received an operating expense number for the 2000 return from Whitney Witasick via telephone and included it on the return, since he assumed that the number reflected 100% of the first two operating expense columns of the ledger sheets ("green sheets"). (Trial Tr. Day 2, 72.) However, he acknowledged the number he used did not match the total of the first two columns of the green sheets, but given the history of deduction percentage, Estes felt it was implied to be for repairs and maintenance of Stoneleigh. (Trial Tr. Day 2, 153-54.)

Estes testified that he used a worksheet to calculate the figures for the 2000 return but that IRS Special Agent Deer, the case agent, failed to return the one page worksheet when she gave him copies of the records he had turned over to the Government. (Trial Tr. Day 2, 162-64.) Then Estes said that he had written notes in his computer program in October, 2001 regarding

4

the information he got from Mr. and Mrs. Witasick. (Trial Tr. Day 2, 164.) He did not produce a printout of that computer program until October, 2008. (Trial Tr. Day 2, 160-61.) Estes claimed he entered into his computer program a note documenting that he obtained information about Virginia expenses from Mr. and Mrs. Witasick on October 12, 2001. (Trial Tr. Day 2, 166.) Estes was then confronted on cross-examination with the fact that he signed the return on October 11, 2001, the day before his newly discovered computer entry. (Trial Tr. Day 2, 166-68.) Estes explained the discrepancy by saying that he might have had the information for a day or two before entering it into his computer program. (Trial Tr. Day 2, 157-59, 166-68.)[2]

Agent Jacqueline English, an IRS tax return examiner, and Burghardt testified the details of the actual expenses contained in the green sheets are needed for a tax preparer to compute a home office deduction correctly. (Trial Tr. Day 3, 172, Jan. 28, 2009 (Burghardt))[3]; (Trial Tr. Day 5, 57-58, Jan. 30, 2009 (English).) However, former Witasick tax preparer Robert Coleman acknowledged that "a tax return is a taxpayer's best effort to accurately report income and deductions related to that individual taxpayer for a given year..." (Trial Tr. Day 4, p. 30, Jan. 29, 2009.) As with the other tax preparers, Coleman relied upon information provided to him by the Defendant. "Anything relating to income and deductions and whatnot, I would have gotten from the taxpayers." (Trial Tr. Day 4, p. 30-31.)

Agent English presented a report with her analysis of the deductions that had been overstated on the 2000 return and "assume[d] in doing [her] calculations… that a hundred

---

[2] See generally Def. Mot. For Acquittal Or, In The Alternative, For A New Trial [Docket #224], see also Def. Mot. For New Trial Pursuant To Federal Rule Of Criminal Procedure 33 [Docket #227] (arguing numerous other inconsistencies between Estes' testimony and evidence presented make Estes' testimony incredible, in addition to proffers of what Witasick's defense would have been had been the testimony been credible in the Defendant's view).

[3] Included in Burghardt's testimony, among other deductions, was that the Defendant claimed a recreational vehicle was 100% business expense for his law practice because he used it to drive from Arizona to Virginia. (Trial Tr. Day 3, 195-196, Jan. 28, 2009; Government's Ex. 4-1.)

5

percent of the construction material and construction labor charges on the green sheets were a hundred percent deducted." (Trial Tr. Day 5, 70, Jan. 30, 2009.)  Agent English testified she gave the Witasicks the "benefit of the doubt" in making her computations to ensure the deductions were not overstated but admitted she used 11.6% for all of the Stoneleigh expenses even though some of the Stoneleigh expenses should have been 100% deductible and many expenses "shouldn't have been deducted at all."  (Trial Tr. Day 5, 59-60.)  Agent English also testified she was unaware that a law firm was occupying the basement of Stoneleigh when she prepared her report in March of 2006, which was used to secure the indictment from the Grand Jury.  (Trial Tr. Day 5, 85-86.)

Upon cross-examination of Burghardt, Defense counsel solicited testimony that Witasick went to two accountants to prepare his 2001 tax return, made numerous revisions, but ultimately did not file a return, on advice from counsel, because he learned he was the target of a federal criminal investigation.  (Trial Tr. Day 3, 177-78, Jan. 28, 2009.)

The Government presented Witasick's former law partners (Messers. John Parker and Jerald Thompson) and accountant for 2003 (Mr. Robert Coleman), who provided testimony related to the Klein conspiracy charge in Count One of the indictment.  (See generally Trial Tr. Day 2, 227-253, January 27, 2009; Trial Tr. Day 4, 20-70, 110-187, January 29, 2009.) At the close of the Government's case in chief, I granted Defendants' Rule 29 motion and dismissed the Klein conspiracy charge on the grounds of insufficient evidence. (Trial Tr. Day 6, 23, Feb. 2, 2009.)

The Defendant chose to rest his case-in-chief without offering any evidence. (Trial Tr. Day 6, 25, Feb. 2, 2009.)

*Verdict and Post-Trial*

On February 3, 2009, the jury returned a verdict of guilty on all counts as to Kevin Witasick and acquitted Whitney Witasick on all counts. (Trial Tr. Day 7, 40-42, Feb. 3, 2009.)

Post-trial, Kevin Witasick filed three motions, as stated on page one. The Government filed a response [Docket #230], and the Defendant filed a reply to the response [Docket #235], attaching the affidavit of Donald. L. Kingsett, Esq. CPA, who made new calculations that showed Witasick ought to be acquitted, or granted a new trial, because the deductions made were correct.[4]

## II.   **STANDARD OF REVIEW**

The Defendant's three motions contend that, under the totality of the evidence, no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt, therefore under Rule 29[5] (Fed. R. Crim. P. 29) a

---

[4] The Defendant argues Kingsett's calculations are newly discovered evidence because the calculations were not available at trial because of the Government's alleged material amendment to the indictment. See Title F, infra (discussing the reasons I reject the fatal variance argument). According to United States v. Bales, the five requirements for granting a Rule 33 motion for new trial on the grounds of newly discovered evidence are:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial;
> (b) facts must be alleged from which the court may infer diligence on the part of the movant;
> (c) the evidence relied on must not be merely cumulative or impeaching;
> (d) it must be material to the issues involved; and
> (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

813 F.2d 1289, 1295 (4th Cir. 1987). Under the Bales test, Kingsett's calculations are not newly discovered. Newly discovered evidence does not hinge on knowledge of the apposing party's trial strategy. Having one's own accountant verify or dispute the calculations made by the Government was available to the Defendant prior to and at trial. Therefore, the affidavit does not constitute newly discovered evidence because it could have been ascertained with due diligence and presented by the Defendant at trial.

[5] Federal Rule of Criminal Procedure 29 (d)(1), applicable to post-conviction rulings on Rule 29 motions states, in pertinent part:

> d) Conditional Ruling on a Motion for a New Trial.
> (1) Motion for a New Trial. If the court enters a judgment of acquittal after a guilty verdict, the

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 7 of 26   Pageid#: 3240

judgment of acquittal must be granted, or alternatively, the court should grant Mr. Witasick a new trail according to Rule 33 (Fed. R. Crim. P. 33).[6] In addition, the Defendant argues for a judgment of acquittal because the Government's trial theory broadened the charges returned by the Grand Jury, thereby constituting a constructive amendment of the indictment in violation of Witasick's Fifth Amendment rights.[7]

The standard of review for deciding a Rule 29 motion is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982). A guilty verdict is to be upheld if it is supported by substantial and competent evidence. Glasser v. United States, 315 U.S. 60, 80 (1942). In determining the issue of substantial evidence, it is not necessary for the court "to be convinced beyond a reasonable doubt of the guilt of the defendant." White v. United States, 279 F.2d 740, 748 (4th Cir. 1960) cert. denied, 364 U.S. 850 (1960). As such, the court may not usurp the jury's exclusive function by weighing evidence, drawing inferences of fact, resolving evidentiary conflicts, or assessing credibility of witness. See United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983) cert. denied, 465 U.S. 1028 (1984), see also United States v. Dreitzler, 577 F.2d 539, 545 (9th Cir. 1978).

court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination.

[6] Under Federal Rule of Criminal Procedure 33, a district court may grant a new trial in the interests of justice and when that motion attacks the weight of the evidence the Court's authority is much broader than when it is deciding a motion to a acquit on the grounds of insufficient evidence. United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985).

[7] A constructive amendment occurs "when the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986) (citing United States v. Johnson, 713 F.2d 633, 643 (11th Cir. 1983). "When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is per se reversible error." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) (citing United States v. Keller, 916 F.2d 629, 633 (11th Cir. 1990)).

8

Under Rule 33, a district court may "grant a new trial in the interests of justice," and the "court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence" – namely the court "may evaluate the credibility of the witnesses." <u>United States v. Arrington</u>, 757 F.2d, 1484, 1485 (4th Cir. 1985).  However, a Rule 33 motion is not warranted based on witness' credibility when the witness' testimony has already been attacked at trial. <u>United States v Gilbert</u>, 668 F2d 94, 96 (2nd Cir. 1981), <u>cert. denied</u>, 456 U.S. 946 (1982). When the court does not believe that the evidence supports the jury's verdict, such that an innocent person may have been convicted, the court will conclude a manifest injustice has occurred and grant a Rule 33 motion for new trial. <u>Arrington</u>, 757 F.2d at 1485.

### III.    DISCUSSION

Contained in the three motions before me, the Defendant has asserted numerous overlapping grounds for acquittal or, in the alternative, a new trial based on the interests of justice.  Broadly stated, the Defendant charges that the evidence was insufficient to sustain a conviction because inherently incredible evidence was admitted, and that the Defendant was not accorded a fair trial.  I do not agree.

Specifically, the Defendant contends:

A.  The testimony of the Government witness Chuck Estes was inherently incredible;

B.  The Government lost or destroyed evidence or allowed perjured testimony to go uncorrected;

C.  The evidence was insufficient to prove the charges of tax evasion and tax perjury;

D.  The evidence was insufficient to prove the charge of failing to file a federal tax return;

E.  Evidence presented to the jury regarding the dismissed <u>Klein</u> conspiracy prejudiced the jury, and coupled with the deliberate ignorance instruction,

9

relieved the Government of its burden; and

    F.   The Government's trial theory broadened the charges returned by the Grand Jury, constituting a constructive amendment of the indictment.

I am not convinced of the Defendant's innocence beyond a reasonable doubt, as per Rule 29, and I find no manifest injustice based upon the belief that a reasonable juror could not have found the Defendant guilty. All of the novel theories and contradictory evidence presented in the Defendant's voluminous post-trial motions would have been appropriate to present before the jury for their consideration during the Defendant's case-in-chief, but do not satisfy the aforementioned standards for Rule 29 or 33 post-verdict motions. Therefore, after full consideration of the arguments and law, discussed below, in accordance with both the Rule 29 and Rule 33 standards, I will **DENY** all the Defendant's motions.


    A.  <u>The Testimony of the Government Witness Chuck Estes was Inherently Incredible</u>

The Defendant contends the Government's case rests entirely on the testimony of his accountant, Chuck Estes who provided inherently incredible testimony which is insufficient to permit a jury to final all elements of the charged crimes beyond a reasonable doubt. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 315 (1979) (citing <u>In re Winship</u>, 397 U.S. 358, 362 (1970)).

The Defendant argues Estes' testimony is inherently incredible for a number of reasons. First, Estes testified that Witasick told him Stoneleigh was used 75% for business in 1999 and 100% for business in 2000. The Defendant purports he was completely in the dark about the percentage or the method Estes used to deduct Stoneleigh expenses in 1999 and 2000. Estes testified these numbers came from work papers, but the Defendant points out there was no evidence that Mr. Witasick ever saw or knew about the work papers. Further, the amount of tax due on the returns was not sufficiently different from other years to give the Defendant reason to

question the tax returns were incorrect. Estes testified that he told Mr. Witasick about the rules for computing a home office deduction and that Mr. Witasick said he could justify the 75% and then the 100% deductions.

The Defendant points to the discrepancy about the fact that Estes received information about Virginia expenses from the Witasicks in October 2001 for the 2000 return. Estes testified he recorded the calculation of figures received on a computer program that was not presented at trial. Further, it was brought out at trial that Estes did not use actual expense details to make the home office deduction calculation. Because Estes handled the Virginia law firm's payroll records, the Defendant argues Estes should have known the 75% and 100% deduction was impossible given a family of four occupied Stoneleigh and maintained bedrooms, nurseries, a personal kitchen, dining rooms, and household employees. The Defendant makes the point that had Estes inquired as to how much space of Stoneleigh was used for the law practice, Witasick would have provided the information to accurately make the home office deduction.

Lastly, the Defendant contends Estes' testimony was self-serving since he is on probation from the Arizona Board of Accountancy and if another complaint is filed against him, he likely will lose his CPA license. To wit, his testimony is an after-the-fact effort to justify the deductions he took on Mr. Witasick's tax returns.

The contention that Estes' testimony is not credible is rejected out of hand. It is well settled that a district court does not have unlimited discretion to consider a Rule 29 motion for judgment of acquittal and my not weigh the evidence nor consider the credibility of witnesses, as that function is exclusively left for the jury to determine. See United States v. Coombs, 26 Fed. Appx. 198, 201 (4th Cir. 2002) (citing United States v. Arrington, 719 F.2d at 704; see also, United States v. Dreitzler, 577 F.2d at 545. A guilty verdict is to be upheld if it is supported by

substantial and competent evidence. <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942).  Further, a Rule 33 motion is not warranted based on witness' credibility when the witness' testimony has already been attacked at trial. <u>United States v Gilbert</u>, 668 F.2d 94, 96 (2nd Cir. 1981), <u>cert. denied</u>, 456 U.S. 946 (1982).

Throughout the Defendant's motions, Estes is painted as the real bad actor in this case, however shifting the blame to the accountant is not convincing.  Estes' abilities as an accountant were not on trial.  The contradictory nature of Estes' testimony was presented to the jury at trial through lengthy cross-examination, and the jury was able to adequately weigh the credibility of all testimony and evidence.  As a result, the jury acquitted Whitney Witasick based on the same evidence.

There was no rebuttal evidence presented at trial or in this motion that Estes tampered with evidence or perjured himself.  Like all witnesses, corroboration bolsters testimony in the eyes of a jury but the lack thereof does not prove the existence of perjured testimony or inherent incredibility in order for a court to overturn a verdict.  Preparing a tax return is separate and apart from conducting an audit.  Properly calculating a home office deduction is not possible if the information given by a client is incorrect, and a tax preparer is under no obligation to investigate the information given by a client.  Further, Estes' possible bias – seeking to protect himself from professional repercussions – was thoroughly explored on cross-examination to the extent it was relevant to the trial.

At best, the arguments offered by the Defendant constitute impeachment evidence which is insufficient to grant acquittal or new trial.  The Fourth Circuit has observed, "motions for a new trial based on impeaching evidence discovered after trial should be granted 'only with great caution and in the most extraordinary circumstances.'"  <u>United States v. Custis</u>, 988 F.2d 1355,

1360 (4th Cir. 1993) (quoting <u>United States v. Sanchez</u>, 969 F.2d 1409, 1414 (2d Cir. 1992)).  In this case, an extraordinary circumstance is not met because the impeachment evidence was not discovered after trial, rather, Estes was thoroughly cross-examined and the jury was allowed to weigh his credibility before rendering a verdict.

There was ample evidence provided to establish all elements of the offenses which allowed the case to be decided by the jury.  The trial provided a reasonable juror with enough evidence to establish guilt beyond a reasonable doubt.  Therefore, there is nothing in the record or in case law that provides me with reason to grant an acquittal or a new trial based on Estes' conflicting testimony.

B.  <u>The Government Lost or Destroyed Evidence or Allowed Perjured Testimony to go Uncorrected</u>

The Defendant boldly alleges the Government deliberately lost or misplaced Estes' October 2001 computer worksheet, to Witasick's detriment.  There are no facts supporting any prosecutorial bad faith or illegal activity, and one could just as easily speculate that the existence of the worksheet would have been inculpatory of codefendant, Whitney Witasick.[8]  In sum, the Defendant claims the document may have been exculpatory, as to him, without providing any evidence pertaining to the content of the document.  Further, the Defendant argues the Government had knowledge of the document's content and allowed Estes to commit perjury without correcting his testimony.  There is no evidence to support such a conclusion.

The Defendant's argument is baseless speculation contending the document was either purposefully lost or subject to a negligent prosecutor, who recklessly failed to preserve it for trial

---

[8] The worksheet could have confirmed the Government's contention that Whitney Witasick played a central role in the tax crimes alleged.

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 13 of 26   Pageid#: 3246

under Rule 16, thereby depriving the Defendant of due process.[9]  Fed. R. Crim. P. 16.  The

Defendant cites United States v. Elliott, which states objective bad faith exists where:

> "[T]here is no evidence of an established practice which was relied upon to
> effectuate the destruction, where the applicable documents teach that destruction
> should not have occurred, and where the law enforcement officer acted in a
> manner which was either contrary to applicable policies and the common sense
> assessments of evidence reasonably to be expected of law enforcement officers or
> was so unmindful of both as to constitute the reckless disregard of both." 83 F.
> Supp. 2d 637, 647-48 (E.D. Va. 1999).[10]

However, Elliott also states a defendant must demonstrate not only that the lost evidence

had *possible* exculpatory value, but also that the government had an *improper motive* in failing to

preserve the item in question.  Id. at 642 (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988)

and California v. Trombetta, 467 U.S. 479, 489 (1984) (emphasis added)).  Therefore, "the

presence or absence of bad faith by the [government] for purposes of the Due Process Clause

must necessarily turn on… knowledge of the exculpatory value of the evidence at the time it was

lost or destroyed."  Id.

A knowing failure by the government to correct perjured testimony requires a reversal if

"there is any reasonably likelihood that the false testimony could have affected the judgment of

the jury." United States v. Bunn, 26 Fed. Appx. 139, 144 (4th Cir. 2001) (citing Kyles v.

Whitley, 514 U.S. 419, 433 n. 7 (1995)).  I do not consider the Defendant's speculation as a

"reasonable likelihood" in order to find that Estes' testimony was false and that the Government

knew it was false.

---

[9] The fundamental principle of due process is that the defendant is entitled to be made aware of, and to use, all
evidence which tends to exculpate him of guilt of the charges against him.  Kyles v. Whitley, 514 U.S. 419, 432
(1995); United States v. Brady, 373 U.S. 83, 86 (1963).

[10] In Elliott, a DEA Agent had "authorized the destruction of valuable evidence within hours of its seizure, based on
his unsubstantiated assumption that the items were contaminated, and without first conferring with a chemist and in
contradiction to the rather plainly worded regulations requiring the preservation of evidence for due process
purposes."  83 F. Supp. 2d at 647.

In order to rule in favor of this portion of the motion, one needs to believe the Defendant's theory that Estes is a liar, and the Government was motivated to act in bad faith. The Defendant has produced no evidence to concretely refute Estes' testimony describing the document at trial.[11] Therefore, I cannot find the evidence was possibly exculpatory. To find otherwise would allow any criminal defendant to claim the existence of some lost or destroyed exculpatory document, and thereby, possibly void every jury verdict.

I also dismiss any allegation of bad faith on the part of the Government. Both defendants were provided with thousands of documents through discovery by the Government in accordance with the law. At no time has there been a contention the Government was motivated to obtain a conviction of Kevin Witasick at the expense of a possible acquittal of codefendant Whitney Witasick. Rather, the Defendant ignores the fact that the document, if it contains the information alleged, would inculpate Whitney Witasick, who was acquitted on all counts.

As previously stated, Estes' conflicting testimony was thoroughly examined by the Defendant's counsel at trial and his credibility was an issue to be determined by the jury. As such, the uncorroborated testimony by Estes as to the existence and absence of his worksheet was known to the jury, and they were able to decide for themselves whether that fact was important during deliberation. The jury was properly instructed that they could believe all or none of the testimony of each witness. The jury heard the evidence, deliberated, acquitted Whitney Witasick, and convicted Kevin Witasick. Therefore, the Defendant's arguments are rejected.

C.  The Evidence was Insufficient to Prove the Charges of Tax Evasion and Tax Perjury

The Defendant argues there is insufficient evidence to sustain convictions for tax evasion

---

[11] The Defendant relies on his previous argument that Estes perjured himself to protect his professional license.

and tax perjury because the evidence presented by the Government does not satisfy all elements of the crimes charged.

*Tax Evasion*

The Government successfully offered evidence to the jury that satisfied its burden of production. For the Government to meet its burden, it must show: (1) an affirmative act constituting an evasion or attempted evasion; (2) a tax deficiency and (3) willfulness. Sansone v. United States, 380 U.S. 343, 351 (1965).

(1) The general rule is that "any conduct, the likely effect of which would be to mislead or conceal" for tax evasion purposes, constitutes an attempt. Spies v. United States, 317 U.S. 492, 499 (1943). This element is uncontested and I conclude there was sufficient evidence presented to the jury to determine if an attempt to "mislead or conceal" was made.

(2) Whether a tax deficiency is substantial is a question for the jury. United States v. Gross, 286 F.2d 59, 61 (2d Cir.), cert. denied, 366 U.S. 935 (1961). The Government need not prove the exact amount of the additional tax owed. United States v. Johnson, 319 U.S. 503, 517-18 (1942). The Defendant contends there was no evidence establishing a substantial income tax due because Estes and Agent English both indicated at trial they utilized assumptions when making deduction calculations. At trial, Estes' assumptions, based on accountant-client trust, and English's assumptions, made conservatively with less than full and clear information, were thoroughly explored on cross-examination.

The Defendant has now, post-verdict, attempted to submit an affidavit from Donald L. Kingett, Witasick's own reviewing accountant, showing the deductions he made were proper. This impeachment evidence is not newly discovered because it was available to present to the

16

jury in the Defendant's case-in-chief and for cross-examination of Estes and English.[12]  As stated previously, motions for a new trial based on impeaching evidence should be granted sparingly.  Custis, 988 F.2d at 1360.  Kingsett's affidavit is not compelling enough to overturn a jury verdict and grant a new trial.  Further, Estes' testimony and Agent English's schedules were sufficient evidence for the jury to determine whether or not a tax loss existed.

(3)  Willfulness has been described as the voluntary, intentional violation of a known legal duty.  Cheek v. United States, 498 U.S. 192, 201 (1991). To establish willfulness, it must be proved that the defendant was aware of his obligations under the tax laws.  United States v. Buford, 889 F.2d 1406, 1409 (5th Cir. 1989).  Willfulness generally must be inferred from the Defendant's acts or conduct, and once the evidence establishes that the tax evasion motive played any role in a taxpayer's conduct, the jury may infer willfulness from conduct, whose likely effect would be to mislead or to conceal.  Spies v. United States, 317 U.S. 492, 499 (1943).  Willfulness may be shown by circumstantial evidence alone. United States v. Schiff, 612 F.2d 73, 77-78 (2d Cir. 1979).

In this case, the willfulness standard was presented to the jury, they diligently weighed the details of the standard, and performed their duty, as evidenced by Whitney Witasick's acquittal on all counts. Evidence presented at trial established beyond a reasonable doubt that Kevin Witasick willfully evaded his tax liability, willfully filed tax returns, and willfully failed to file a tax return.[13]

Despite the Defendant's attempt to portray himself a tax neophyte, he was an attorney, ran a successful law practice, provided detailed information relating to expenses and deductions to be claimed on the tax returns, and had a history of filing tax returns. Background and

---

[12] The Defendant's decision to rest without presenting any evidence to the jury is a bell that cannot be unrung by the motions before me, because the evidence is not newly discovered.  See footnote 4, supra.
[13] The willfulness standard is discussed here for all three charges in the interests of brevity.

17

experience can be considered as having a bearing on a defendant's ability to form a willful intent.  See United States v. Smith, 890 F.2d 711, 715 (5th Cir. 1989).

The pattern of overstating business expenses provides a valid basis for an inference of willfulness. The only person to benefit from Witasick's over statement of business expenses was he and his family. The evidence established not only Witasick's knowledge of tax law, but showed a pattern of having his lifestyle financed through the concealment of personal items as business related expenses and gifting employees their salaries. The jury could infer willfulness from numerous facts presented, including claiming on his tax return that a recreational vehicle was 100% business expense for his law practice because he used it to drive from Arizona to Virginia.  There was ample evidence presented to the jury that would lead a reasonable juror to infer the Defendant acted willfully with respect to tax evasion, tax perjury, and failure to file a federal income tax return.  Therefore, Government successfully met its burden of production for a jury to determine the Defendant's willfulness.

*Tax Perjury*

The Government successfully established all the elements of a 26 U.S.C. § 7206(1) federal tax perjury charge so a judgment of acquittal or a new trial will not be granted.  To meet its burden, the Government must proffer evidence that: "(1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." United States v. Nicolaou, 180 F.3d 565, 572 (4th Cir. 1999) (internal quotation omitted).[14]  The defendant is not required to have prepared a tax

---

[14] It is uncontested that for the years 1999 and 2000, the first two elements of the charge were met.  The willfulness element was discussed under the *Tax Evasion* title in § (3), *supra*.  Therefore, the only issue remaining is whether

return in order to be convicted of 26 U.S.C. § 7206(1). It is sufficient that the information provided resulted in the filing of a materially false tax return. United States v. Wolfson, 573 F.2d 126, 225 (5th Cir. 1978). Further, a taxpayer's signature on a return is prima facie evidence that signer knew contents of return. See United States v. Mohney, 949 F.2d 1397, 1407 (6th Cir. 1991), cert. denied, 504 U.S. 910 (1992).

The Defendant contends no false information to a material matter was contained in the tax returns for 1999 and 2000 because the evidence presented was based on Estes' and Agent English's assumptions that improper deductions were taken. These arguments are fundamentally similar to those argued under the *Tax Evasion* title in § (2), *supra*, and are similarly rejected for the aforementioned reasons. Estes' testimony, Agent English's schedules, and the Defendant's background experience[15] were sufficient evidence for the jury to determine whether or not Witasick was aware the tax return contained false information. Further, the Defendant signed, of his own free will, the tax returns prepared by his accountant based upon information the Defendant provided, which overstated business expenses and concealed personal renovations to Stoneleigh. In light of this evidence, I conclude that there was sufficient evidence for a reasonable juror to convict Witasick for violating § 7206(1).

D. The Evidence was Insufficient to Prove the Charge of Failing to File a Federal Tax Return

The elements of failing to file a federal tax return was sufficiently presented by the Government. The Defendant thoroughly cross-examined Government witnesses and solicited

---

the third element is satisfied.

[15] See *Tax Evasion* § (3), supra, in discussing the Defendant's familiarity with tax law and the contents of his returns.

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 19 of 26   Pageid#: 3252

testimony that the Defendant intended to file a 2001 tax return, but ultimately did not file based on the advice of counsel. To establish Witasick violated 26 U.S.C. § 7203, the Government had to show that (1) Witasick was required to file an income tax return, (2) he failed to do so, and (3) the failure to file was willful.[16]  United States v. Ostendorff, 371 F.2d 729, 730 (4th Cir. 1967), cert. denied, 386 U.S. 982.[17]

The Defendant argues he made several attempts to have his 2001 tax return prepared. By the time it was finished, Witasick learned he was the subject of a federal criminal investigation and was advised by counsel to not file the return. The Defendant believes his intent and reliance on advice of counsel establishes his failure to file was not willful, citing United States v. Boyle. 469 U.S. 241, 249-250 (1985) (The Supreme Court described narrow circumstances that willfulness was negated "[w]hen a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken."). Witasick contents this reliance, even if the advice was erroneous, negates the element of willfulness, so the Government failed to prove any failure to file was willful.

Reliance on the counsel of a tax professional, as an affirmative defense, requires evidence a defendant provided a tax advisor with full disclosure of all pertinent facts and then relied in good faith on the advice given. See United States v. Tandon, 111 F.3d 482, 490 (6th Cir. 1997) (noting that a jury instruction for professional reliance defense is not warranted where there was no evidence that full disclosure was made); United States v. Brimberry, 961 F.2d 1286, 1290-91 (7th Cir. 1992) (denying good faith reliance defense in the absence of full disclosure of all

_____

[16] The willfulness element was discussed under *Tax Evasion* § (3), supra, and is expanded on in this section as it additionally pertains to 26 U.S.C. §7203, failure to file a federal tax return.

[17] It is uncontested that elements (1) and (2) were satisfied by the Government.

material facts).  As stated throughout this Opinion, the Defendant sorely was lacking in providing full disclosure to his tax preparers and advisors.

It simply cannot be explained away that Mr. Witasick, a lawyer with tax knowledge, sophistication, and experience filing federal tax returns, relied on advice to not file a tax return. As such, the Defendant renews his objection to the deliberate ignorance jury instruction.  A deliberate ignorance instruction is appropriate in tax evasion cases. United States v. Schnabel, 939 F.2d 197, 203-204 (4th Cir. 1991) (stating a willful blindness or deliberate ignorance instruction "allows the jury to impute the element of knowledge to [a] defendant if the evidence indicates… both actual knowledge and deliberate ignorance… a willful blindness instruction is appropriate.") (see also United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996) cert. denied, 517 U.S. 1229 (1996) (holding the district court properly utilizes a deliberate ignorance instruction when the evidence supports an inference of deliberate ignorance on the part of the defendant.)).  The Defendant's theory is that his conduct was based on good faith, but deliberate ignorance of a duty to pay taxes is contrary to a good faith belief.  Even if there was an issue of self incrimination fearing a possible indictment, a tax return could have been filed without the pertinent information under a claim of the Fifth Amendment right against self incrimination.

The seminal case relied on by the Defendant is United States v. Boyle.  469 U.S. 241. Further examination shows the Supreme Court did not allow for a lessening of the duty to pay federal taxes.  See id. at 249-250.  Specifically, the Court held that Congress has placed a duty to pay taxes that is fixed and clear.  Id. at 249.  "[O]ne does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due… [r]eliance by a lay person on a lawyer [or accountant] is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute."  Id. at 251.  While it is true that the

Court discusses reasonable exceptions to the duty to file tax returns,[18] Witasick's reliance does not come close to fitting an exception, so it could very likely be viewed by a reasonable juror as an unreasonable excuse to a known legal duty. Therefore, a judgment of acquittal or new trial will not be granted.

    E.   <u>Evidence Presented to the Jury Regarding the Dismissed Klein Conspiracy Prejudiced the Jury, and Coupled with the Deliberate Ignorance Instruction, Relieved the Government of its Burden</u>[19]

Granting the Defendant's Rule 29 motion to dismiss the <u>Klein</u>[20] conspiracy charge at the close of the Government's case-in-chief cannot now be used as a reason for granting the Defendant's Rule 29 motion for acquittal or a Rule 33 motion for new trial. The Defendant cannot have it both ways.

The Government's presentation of Witasick's former law partners and accountant for 2003, according to the Defendant, gave improper character testimony showing he was a bad person and must have committed *some* crime. Additionally, the Defendant alleges the Government's decision to pursue the conspiracy claim was nothing more than an attempt to extort a guilty plea from Witasick by including his wife in the proceedings. Kevin Witasick contends he was irretrievably prejudiced by being tried together with Whitney, who successfully asserted an "innocent spouse" defense because an innocent spouse presented to a jury cries out for the finding of a non-innocent spouse by that same jury.

After dismissing the <u>Klein</u> conspiracy at the conclusion of the Government's case, I gave

---

[18] The Supreme Court discusses how exceptions, consisting of such things as a taxpayer's disability or circumstances suffered beyond his/her control, are different from reliance on a tax advisor. <u>Boyle</u>, 469 U.S. at 249-52.

[19] The deliberate ignorance instruction is discussed immediately, <u>supra</u>.

[20] <u>See</u> <u>United States v. Klein</u>, 124 F. Supp. 476 (S.D.N.Y. 1954) (recognizing, under 18 U.S.C. § 371, conspiracy to defraud United States by impeding functions of IRS), <u>aff'd</u>, 247 F.2d 908 (2d Cir. 1957).

the jury a corrective instruction.  Litigation frequently produces situations where the prosecution has not met its burden to the satisfaction of the court at the close of their case-in-chief.  It would be judicially inefficient beyond compare if every case was acquitted or granted a new trial because testimony was elicited for dismissed charges, while other charges survived.

Further, Witasick's actions, illustrated through other evidence presented at trial and discussed previously, could have also given the jury a poor view of his character.  The <u>Klein</u> conspiracy evidence cannot be shown to be the sole cause of that poor character portrayal.  It is mere speculation, at best, to argue Witasick would have been seen as an honest fair dealer, but for the <u>Klein</u> conspiracy testimony.  It is also hyperbole to contend Whitney Witasick was maliciously prosecuted to produce a plea agreement.  These are factually baseless claims supported only by the Defendant's proffer; therefore there is no miscarriage of justice and I will sustain the jury verdict.

F. <u>The Government's Trial Theory Broadened the Charges Returned by the Grand Jury, Constituting a Constructive Amendment of the Indictment</u>

The Defendant's final argument also fails because the indictment accurately serves its dual purpose, and pre-trial communications regarding the Government expected trial strategy does not affect the informative purpose of an indictment.  The dual purpose of an indictment is to "(1) to notify a defendant of the charge against him so that he may prepare to defend himself and (2) to enable him to plead a double jeopardy bar, if applicable."  <u>United States v. Thomas</u>, 367 F.3d 194, 197 n. 1 (4th Cir. 2004) (citing <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962)).

The Defendant claims essential elements of the offenses set forth in the indictment were altered by the Government's changing trial theory, violating Witasick's Fifth Amendment rights.  A constructive amendment occurs "when the essential elements of the offense set forth in the

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 23 of 26   Pageid#: 3256

indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986) (citing United States v. Johnson, 713 F.2d 633, 643 (11th Cir. 1983). "When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is *per se* reversible error." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) (citing United States v. Keller, 916 F.2d 629, 633 (11th Cir. 1990)).

The Defendant interprets Agent English's testimony to mean she prepared her March, 2006 report without knowledge a law firm occupied the basement of Stoneleigh. Therefore, the Defendant contends the Grand Jury indicted Witasick based on Agent English's erroneous figures which assumed there was no business being conducted in Stoneleigh. Basically, the fatal variance alleged is that evidence presented to the Grand Jury differed from the evidence presented to the trial jury, thus adversely affecting the Defendant's ability to prepare a defense since Witasick's interpretation of the indictment was that the Grand Jury believed business deductions were made without knowledge of Stoneleigh's home office.

The Witasicks were tried only on tax charges contained in the indictment. It is a common fact that evidence presented at trial may vary in some manner from the evidence obtained during the investigation and presented to the Grand Jury. An indictment does not promise to provide a defendant with the Government's trial strategy. Rather, the question of fatal variance turns on whether the indictment provided the defendant with adequate notice to defend the charges against him, which in this case it did. See United States v. Floresca, 38 F.3d 706, 710-711 (4th Cir. 1994) (en banc). "The Court has long recognized that an indictment may charge numerous offenses or the commission of any one offense in several ways." U.S. v. Miller, 471 U.S. 130, 136 (1985). Particularly, grand juries are oftentimes presented with evidence not admissible at

24

trial. In this case, for instance, the Government was precluded from presenting evidence relative to the two insurance fraud charges contained in the indictment, which were jointly presented to the Grand Jury.

A re-reading of the indictment shows it alleges Defendant overstated business expenses. Common sense tells the reasonable man that stating business expenses on a tax return relates to business deductions. The indictment contains the language, "… and engaged in conduct the likely affect of which was to mislead and to conceal." (Indictment Of Kevin And Whitney Witasick, Docket #14). That language is sufficient to put the Defendant on notice as to what the Government was planning to present at trial, despite the fact a home office was not indicated in the indictment's introductory section.

In a tax evasion case, it is not a fatal variance when the indictment alleges that deductions were entirely false, but the evidence at trial indicates that the deduction was only partially false. The Supreme Court held that a fatal variance did not occur and there were "no elements of surprise prejudicial to the [defendants'] efforts to prepare their defense." U.S. v. Ragen, 314 U.S. 513, 526 (1942). Similarly, the gravamen of the charge was that the Defendant falsely deducted expenses for running a business out of his home. Whether he falsely deducted everything or just some things, no fatal variance in the charged offense and evidence presented occurred and the Defendant was not handicapped in his preparation for trial.

I consider the indictment to have correctly achieved its purpose and the Defendant's claims of fatal variance to be without merit.

## IV.     CONCLUSION

For the foregoing reasons, and with due respect of our nation's jury system,[21] I will

**DENY** the Defendant's three post-verdict motions.

An appropriate *Order* will be entered.

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying

*Order* to all counsel of record.

Entered this 18th day of August, 2009.


                                        s/Jackson L. Kiser
                                        Senior United States District Judge

---

[21] "[The people] are not qualified to judge questions of *law,* but they are very capable of judging question of *fact.* In the form of juries, therefore, they determine all controverted matters of fact, leaving thus as little as possible, merely the law of the case, to the decision of the judges." Letter from Thomas Jefferson to Abbe Arnoux, 1789, 7 <u>The Writings of Thomas Jefferson Memorial Edition</u>, 422 (Lipscomb and Bergh eds., 1903-04).

Case 4:07-cr-00030-JLK   Document 258   Filed 08/18/09   Page 26 of 26   Pageid#: 3259