IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 4:07CR00030-001 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Memorandum Opinion** |
| | ) | |
| KEVIN J. WITASICK, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |
| | ) | |

Before me are Defendant's four post-trial motions: Motion for Acquittal Based on Rule 29 of the Federal Rules of Criminal Procedure [Docket No. 330]; Motion for Acquittal and/or a New Trial on Count 9 on the Grounds of a Constructive Amendment of the Indictment and/or Fatal Variance [No. 331]; Motion to Dismiss the Indictment as it Fails to State an Offense for Which Defendant Can be Convicted [No. 332]; and Motion for a New Trial in the Interest of Justice Under Federal Rule of Criminal Procedure 33 [No. 333]. On March 5, 2010, I heard oral arguments on all four motions and **DENIED** them all. At the time, I stated the reasons for my ruling and informed all parties that I would issue an in-depth analysis of the motions and my ruling at a later date. This Memorandum Opinion serves that purpose.

Before discussing the legal and factual contentions of the parties, I find it necessary to note that, while the Defendant filed four separate post-trial motions, identical arguments can be found in several of the motions. Therefore I will discuss each motion in turn, but will refrain from duplicating my opinion on repeated arguments unless a different standard of review compels me to revisit the issue.

# I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On November 2–5, 2009, Kevin J. Witasick ("Defendant") and his wife, Whitney S. Witasick, were tried to the court on two counts of a nine-count indictment.[1] The charges in the trial were for mail fraud and health care fraud and stemmed from the Witasicks' management of the Virginia-based branch of Mr. Witasick's Arizona-based law firm, Witasick, Parker, and Thompson.[2] The government alleged Mr. Witasick had added non-employees to the firm's Anthem health insurance. After three days of testimony, both Defendants were acquitted of the mail fraud charges and Mr. Witasick alone was convicted of health care fraud.[3] At the close of the government's evidence, Mr. Witasick moved for a judgment of acquittal. After the verdict, on December 8, 2009, Mr. Witasick renewed that motion and filed three other post-trial motions. (The parties consented to two extensions for the defendant to file his post-trial motions, and I entered orders granting the requests.)

# II. MOTION FOR JUDGMENT OF ACQUITTAL

Defendant's first motion [Docket No. 330] is based on Rule 29 of the Federal Rules of Criminal Procedure, which states that a court may set aside a guilty verdict and enter an acquittal if the evidence was insufficient to sustain the defendant's conviction. FED. R. CRIM. P. 29(c)(2). "The question raised by motion for a judgment of acquittal is

---

[1] The remaining counts, concerning tax issues, were disposed of in a prior trial held on January 26–February 3, 2009. In that trial, a jury found Mr. Witasick guilty on all counts but acquitted Mrs. Witasick on all counts.

[2] The mail fraud charge stemmed from the Witasicks' attempts to file their claims under a disability insurance policy. No allegations of mail fraud were levied against Mr. Witasick for his wrongdoing concerning the Anthem health insurance policy.

[3] Mrs. Witasick was not charged with health care fraud.

whether as a matter of law the government's evidence is insufficient to establish factual guilt on the charges of the indictment." *United States v. Berry*, 583 F. Supp. 2d 749, 752 (E.D. Va. 2008) (internal quotations omitted). The motion should be granted for any offense "for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); *see also Jackson v. Virginia*, 443 U.S. 307, 317–18 (1979). In considering a motion for a judgment of acquittal, the trial court must "consider[] the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the government [and] determine whether any rational fact finder could have found the essential elements of the crimes charged beyond a reasonable doubt." *Berry*, 583 F. Supp. 2d at 752 (quoting *United States v. Childress*, 26 F.3d 498, 501 (4th Cir. 1994)). This standard of review is the same whether the trial was before a jury or before the court. *Compare Glasser v. United States*, 315 U.S. 60, 80 (1942) (jury trial), *with United States v. Ismail*, 92 F.3d 50, 55 (4th Cir. 1996) (bench trial).

Defendant's first argument is that there is no evidence that Mr. Witasick committed the offense charged (health care fraud). Quoting my comments when I announced the verdict, Defendant says there is "no evidence to support the Court's 'inescapable' finding that *Mr. Witasick* directed Mr. Castle [sic] be placed on the firm's policy. In fact, the evidence points to the contrary." (Def.'s Mot. for J. of Acquittal 6.)

There are several things wrong with this claim. Primarily, the Defendant focuses his argument solely on the addition of Zeke Ca'stle to the firm's insurance policy. He neglects to mention that Defendant's family's personal chef, nanny, and groundskeeper (the nanny's husband) were also added to the firm's insurance policy, despite not being employed by the firm. Likewise, Mr. Ca'stle, who was the property manager at the

family's personal home (the basement doubled for the Virginia branch of the law office), was incorrectly listed as an employee of the firm. All of these individuals were added to the firm's insurance at the direction of one who had the authority to do so—Mr. Witasick. (*See* Def.'s Mot. to Dismiss Count Nine 3 (arguing that the decision of who to add to the insurance policy was Mr. Witasick's to make).) Defendant argues elsewhere that the decision of who to place on the policy was his alone to make by virtue of his role as Group Administrator, but he is wrong. His job was to decide *who qualified as an employee under the terms of the policy*. Placing that authority with him was not carte blanche to add his friends and neighbors to the firm's insurance policy.

Secondly, there is evidence that Mr. Witasick directed others to place the ineligible individuals on the firm's insurance. First, Penny Drey, one of the group administrators for the policy, testified that she became aware that there were employees working in Virginia who were "[n]ot [employees] of the law firm . . . ." (Trial Tr. 157, Nov. 2, 2009.) Second, Ms. Drey testified: "Kevin and Whitney had wanted to add a couple of people under the insurance. Zeke [Ca'stle], who took care of the property farm there at Stoneleigh—they are Stoneleigh [the family's personal home] employees. I believe the nanny, Kathy [sic], at the time too." She also noted that, on the form Mr. Witasick sent to her, Zeke Ca'stle was listed as property manager for the firm, but when asked whether Zeke was a property manager for Witasick, Parker, and Thompson, she responded, "No. No." (*Id.* at 159; Ex. 7-1.)

Additionally, the nanny and her husband, Caren and Kristopher Whitlow,[4] were listed as "administrative assistants" on the applications sent from Virginia to Arizona to

---

[4] "And the Whitows were the nannies. Karen [sic] Whitlow was the nanny." (Trial Tr. 162, Nov. 2, 2009.) Caren Whitlow's husband, Kristopher, was a groundskeeper. (Trial Tr. 199, Nov. 3, 2009.)

be forwarded to Anthem. (*See* Ex. 31-1, 31-2; Trial Tr. 200–01, Nov. 3. 2009.) As Mrs. Whitlow testified, the document was filled out—and her job title already filled in—when the Witasicks asked her to sign the application. (Trial Tr. 200–01, Nov. 3, 2009.) Since Mr. Witasick was the only one with the authority to submit applications for health insurance, the inescapable conclusion is that Mr. Witasick caused ineligible persons, namely Kristopher and Caren Whitlow, Zeke Ca'stle, and Joe Merriman, the cook (*see* Ex. 28-1),[5] to be erroneously added to the firm's health insurance policy.

In regard to Mr. Ca'stle, the evidence indicated that he was not considered to be an employee of the firm, despite Defendant's insistence. Ms. Williams, a former legal assistant to Mr. Witasick, testified that Mr. Ca'stle was the groundskeeper at Stoneleigh, moved furniture, and was paid from the household account, *not* the business account.[6] (*See* Trial Tr. 5–6, Nov. 3, 3009.)

Defendant's repeated contention that Mr. Ca'stle was an employee of the firm plays into Defendant's second grounds for his motion—that Kevin Witasick *was* the firm and, since Mr. Ca'stle was an employee of Mr. Witasick, his employment is imputed to the firm. This argument likewise fails. The insurance policy was written for "Witasick, Parker, and Thompson." (*See* Ex. 28-1, 31-1, 31-2.) The fact that the grand jury found Witasick, Parker, and Thompson to be "formerly known as" Kevin Witasick does not compel the conclusion that every person Mr. Witasick hired in any capacity was automatically eligible for coverage under the firm's insurance policy. Furthermore,

---

[5] As Mr. Merriman himself testified, he was hired by Kevin Witasick, "not specifically by the law firm." (Trial Tr. 30, Nov. 3, 2009.)

[6] Other "expenses" paid from the household account included construction expenses for remodeling the family's private master bedroom suite and the salaries of the two nannies and Joe Merriman. (Trial. Tr. 7–8, Nov. 3, 2009.)

Defendant's argument that the government is tethered to the grand jury's determination of this factual issue (that Witasick, Parker, and Thompson was formerly known as Kevin J. Witasick) is not legally sound. Defendant cites no legal support for his conclusion that a fact alleged by the grand jury is considered conclusive at trial.[7] Also, a grand jury reaches its conclusion based on probable cause; to find the same fact at trial, the government must prove the fact beyond a reasonable doubt. *See* U.S. CONST. amend. V; *United States v. Calandra*, 414 U.S. 338, 343 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972). Therefore, even if the fact that Witasick, Parker, and Thompson was the same legal entity as Kevin J. Witasick was determinative, neither the government nor I were bound by the grand jury's determination of this issue. Finally, even if Defendant's argument were correct, the terms of the policy make clear that an employee must be an employee *of the group*, not simply an employee of a legal entity represented by the same individual as the group. (*See* Def. Ex. 55.)

Defendant's next argument in his first motion is that the Indictment failed to allege the scheme or artifice to defraud in enough detail to be sufficient under the law. *See United States v. Bobo*, 344 F.3d 1076, 1084 (11th Cir. 2003) ("An indictment that requires speculation on a fundamental part of the charge is insufficient."). In sum, the Indictment alleged that Mr. Witasick made material false representations to Anthem in an attempt to add ineligible members to the firm's health insurance. The evidence produced at trial proved exactly that. The Indictment was therefore sufficient.

---

[7] I doubt that Defendant would make this argument as to the grand jury's conclusion that Mr. Witasick violated 18 U.S.C. § 1347.

Defendant then argues that since a more specific criminal statute covers the conduct alleged, *see* 18 U.S.C. 1035(a), the rule of lenity[8] compels me to enter an acquittal. The Supreme Court has indicated that "the 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (quoting *Lewis v. United States*, 445 U.S. 55, 65 (1980)); *see also United States v. Hall*, 972 F.2d 67, 69 (4th Cir. 1992). No ambiguity exists in the statute here. The statute is clear on its face. The government chose to pursue the Defendant under 18 U.S.C. § 1347 as opposed to 18 U.S.C. § 1035(a); that was the government's choice. If the evidence established all the elements of § 1347, the rule of lenity does not compel me to enter an acquittal because the evidence *could have* established guilt under another criminal statute. Here, the evidence proved that Mr. Witasick "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice to defraud [a] health care benefit program . . . ." 18 U.S.C. § 1347; *see also United States v. Josephburg*, 562 F.3d 478 (2d Cir. 2009), *cert. denied* 130 S. Ct. 397 (2009) (affirming a conviction under 18 U.S.C. § 1347 for substantially the same conduct engaged in by Defendant). There is no ambiguity.

Defendant's next argument is that he did not directly benefit from placing Mr. Ca'stle on the firm's group insurance policy. Unfortunately for Mr. Witasick, the statute does not require that any benefit flow to the defendant:

> Whoever knowingly and willingly executes, or attempts to execute, a scheme or artifice—
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or

---

[8] "The rule of lenity, however, is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized everything from which aid can be derived it is still left with an ambiguous statute." *Chapman v. United States*, 500 U.S. 453, 463 (1991) (internal quotations and citations omitted).

> property owned by, or under the custody or control of,
> any health care benefit program,
>
> in connection with the delivery of or payment for health
> care benefits, items, or services, shall be fined under this
> title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347.  By attempting to defraud Anthem into covering Zeke Ca'stle, the obvious end to Mr. Witasick's actions was to have Anthem cover an individual who was ineligible under the terms of the policy.  This would necessitate Anthem paying out claims on behalf of Mr. Ca'stle.  Therefore, Mr. Witasick attempted to defraud Anthem into paying health care benefits for an ineligible person.  Those actions satisfy the elements of the statute, and Mr. Witasick's lack of a direct, tangible benefit is immaterial.

Defendant's final argument on this motion is that there was no proof of a material misrepresentation.  This is patently false.  Caren Whitlow, the Witasick's personal nanny, was listed as an "administrative assistant" in communications with Anthem.  (Ex. 31-2.) Caren's husband, generously described as a "groundsman," was likewise held out to be an "administrative assistant."  (Ex. 31-1.)  The Witasick's personal chef, Joe Merriman, was declared as an executive assistant with the firm.  (Ex. 28-1.)  Finally, Zeke Ca'stle was held out to Anthem to be an employee of the firm (Ex. 7-1); he was not.  Had Mr. Witasick declared these individuals to be personal nannies, personal chefs, or personal property managers, Defendant might have a leg to stand on.[9]  Since he misrepresented their positions and employment with the firm, this argument is disingenuous and demonstrably false.

---

[9] Even if the individuals had been accurately described, it does not change the fact that they did not qualify as "eligible individuals" under the policy, which is the fact to which the Group Administrator's approval ultimately attests.

None of the Defendant's arguments compel me to conclude that the evidence was insufficient to find Mr. Witasick guilty of violating 18 U.S.C. § 1347. As such, the Motion for a Judgment of Acquittal should be and is denied.

**III.     MOTION FOR JUDGMENT OF ACQUITTAL AND/OR FOR A NEW TRIAL ON THE GROUNDS OF A CONSTRUCTIVE AMENDMENT OF THE INDICTMENT AND/OR FATAL VARIANCE**

Defendant asserts that either a constructive amendment or a fatal variance to the Indictment has occurred which requires his acquittal. Defendant maintains that count nine of his Indictment sets forth eight factual elements that the grand jury concluded constituted health care fraud. In sum, the Grand Jury alleged "that Kevin J. Witasick secured and attempted to secure group health insurance coverage on the Witasick, Parker and Thompson group policy for ZC, who was employed to perform personal tasks for Kevin J. and Whitney S. Witasick." Defendant maintains that, even when looking at the evidence in the light most favorable to the government, it is clear that an amendment or fatal variance has occurred.

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the district court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented to the grand jury." *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994). A constructive amendment to the indictment is error *per se* and compels reversal. *Id.* at 711; *see also Stirone v. United States*, 361 U.S. 212, 217 (1960) ("Deprivation [of the right to be tried on the charges presented in an indictment] is far too serious to be treated as nothing more than a variance and then dismissed as harmless

error.").  A variance occurs when "the evidence at trial establishes facts materially different from those alleged in the indictment."  *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994); *see also United States v. Bollin*, 264 F.3d 391, 405 (4th Cir. 2001). "A variance constitutes a legitimate grounds for reversal only if the [defendant] shows that the variance infringed his 'substantial rights' and thereby resulted in actual prejudice."  *United States v. Ford*, 88 F.3d 1350, 1360 (4th Cir. 1996) (quoting *Kennedy*, 32 F.3d at 883).  A constructive amendment is a fatal variance (a variance that resulted in actual prejudice and therefore requires reversal[10]) because the indictment, in effect, has been altered "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."  *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999).

First and foremost, the most that can be said to have occurred here is a mere variance that did not prejudice the defendant.  Though defendant does not make the argument, the only variation I see between pleading and proof is that the Indictment alleges Mr. Witasick had "ZC" (presumably Zeke Ca'stle) placed on the firm's insurance, when the proof at trial was that Mr. Witasick placed Zeke Ca'stle, Caren Whitlow, Kristopher Whitlow, and Joe Merriman on the firm's insurance policy.  While the

---

[10] The Fourth Circuit summed up the distinction between a variance and its fatal counterpart as follows:

> However, not all differences between an indictment and the proof offered at trial, rise to the "fatal" level of a constructive amendment. [*See United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998).]  When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. *See id.*  A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense. *See id.*

*Randall*, 171 F.3d at 203.

evidence on Zeke Ca'stle, standing alone, was sufficient to convict Mr. Witasick,[11] the proof at trial concerned the other individuals as well. Therefore, though the Indictment only referred to "ZC," the evidence at trial did vary from that asserted in the Indictment insofar as more evidence was produced than necessary. The Defendant, however, was not surprised by the evidence regarding the other individuals. *See United States v. Ragen*, 314 U.S. 513, 526 (1942) (noting that a fatal variance does not occur where there were "no material elements of surprise prejudicial to the [defendant's] efforts to prepare for [his] defense."). He was able to cross examine them all and introduce evidence during the government's case-in-chief. Additionally, though a contemporaneous objection is not required, *see Floresca*, 38 F.3d at 714, it is telling that neither at trial, nor in this motion, has Defendant objected to the evidence regarding these other people.

Defendant's arguments supporting his contention that a constructive amendment or fatal variance has taken place are unpersuasive and appear to be misplaced in such a motion. The bulk of Defendant's arguments concern his perceived lack of evidence to support his conviction, not that the proof is different from what was presented to the grand jury. First, the Defendant maintains that there was no evidence showing he took any action in the form of communicating with Anthem to have any ineligible individuals placed on the firm's insurance. This is unavailing. The lack of a signed attestation from Mr. Witasick to Anthem is not fatal to the government's case, nor does it constitute a "variance" to the Indictment. The evidence established that Mr. Witasick, manager of the Virginia office of Witasick, Parker, and Thompson, instructed others to file the fraudulent paperwork with Anthem. Specifically, Mr. Witasick sent the paperwork from Virginia to

---

[11] "Q. Okay. Was Zeke a property manager for Witasick, Parker & Thompson?
A. No. No." (Trial Tr. 159, Nov. 2, 2009.)

Penny Drey[12] in Arizona, who filed the employee applications with Anthem.  (*See* Trial Tr.  157, Nov. 2. 2009.)  Mr. Witasick was charged with executing or attempting to execute a scheme or artifice to defraud.  Having others file the fraudulent paperwork with the insurance company certainly does not exonerate him of culpability for those acts.  Causing, but being once removed from, a fraudulent misrepresentation does not an innocent man make.

Defendant's remaining arguments are raised elsewhere in his motions and need not be repeated here.  Suffice it to say that they are as equally unpersuasive in this motion.


**IV.**  **MOTION TO DISMISS COUNT NINE OF THE INDICTMENT AS IT FAILS TO STATE AN OFFENSE FOR WHICH DEFENDANT CAN BE CONVICTED**

In regard to Defendant's third motion [Docket No. 332], a motion "alleging a defect in the indictment" typically must be heard before trial commences; however, "at any time while the case is pending, the court may hear a claim that the indictment . . . fails . . .  to state an offense."  FED. R. CRIM. P. 12(b)(3)(B); *see also United States v. Sutton*, 961 F.2d 476, 478–79 (4th Cir. 1992).  Defendant maintains that the grounds stated in this motion amount to a defect in the Indictment.[13]  Additionally, Defendant asserts that, if a defense is capable of being ruled upon without a determination of any

---

[12] Ms. Drey was the director of office operations for the firm, as well as a Group Administrator of the health insurance policy.  (*See* Trial Tr. 149, 166, Nov. 2, 2009.)

[13] On its face, I am not confident that this is true.  While the motion allegedly "goes to the heart of whether, as a matter of law, Mr. Witasick can be convicted of the crime with which he has been charged, by the Grand Jury . . . ," it attacks the factual basis for Mr. Witasick's convictions; it does not address a claim that the Indictment is missing any element.  By Defendant's own admission, one accused of exactly that which the Grand Jury alleged Mr. Witasick did was held to be a crime in *United States v. Josephburg*, 562 F.3d 478 (2d Cir. 2009).

factual issue, a motion to dismiss is the proper venue through which to pursue such a defense.  *See United States v. Martinez*, 350 F. Supp. 971 (D.C. Cir. 1972).[14]  Defendant contends that, even if all the factual allegations in the Indictment *are* true, they do not amount to a crime for which Defendant can be convicted.  When ruling on such a motion under Rules 12(b)(2) and (3), I am to take the allegations in the indictment as true.  *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).

As I have stated before, the conduct in which the government contends (and the Indictment alleges) Mr. Witasick engaged can—and does—constitute a crime under 18 U.S.C. § 1347.  Therefore, insofar as this motion makes an argument for dismissal under Rule 12(b)(3)(B), it is denied.

Defendants remaining arguments are equally unpersuasive.  First, Defendant's "f/k/a" argument is as immaterial here as it was in his first motion.  Furthermore, the fact that neither John Parker nor Jerald Thompson, Defendant's putative law partners, believed no formal partnership existed does not change my analysis of this issue.[15]

Next, Mr. Witasick's role as a group administrator does not vest in him the decision of who to cover.  His role was merely to determine who qualified as an eligible employee *under the terms of the policy*.  The contention that the decision of who was and was not an employee of the firm was Mr. Witasick's and *not* Anthem's to make is simply wrong.  The insurance policy stated: "An eligible employee is one of the following

---

[14] Defendant appears to be including a Rule 12(b)(2) motion ("any defense, objection, or request that the court can determine without a trial of the general issue") in this motion as well.  A Rule 12(b)(2) motion *may* be made before trial. *See* Fed. R. Crim. Pro. 12(b)(2).

[15] Defendant cites this testimony as proof that the firm *was* Kevin Witasick.  Despite the fact that the policy was written to insure employees of Witasick, Parker, and Thompson, the lack of a signed writing memorializing the terms of a partnership does not save the firm from being a legal partnership.  Under Arizona law, "the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Ariz. Stat. § 29-1012 (Westlaw through Feb. 9, 2010 legislation).

persons who is determined to be eligible for coverage under this policy by the Group Administrator." (Def. Ex. 55.) To be an eligible employee, a person must be "an active, full[-]time employee of the group who works at least 25 hours per week . . . and 50 or more weeks per year . . . ." (*Id.*) Mr. Witasick, as a Group Administrator, was supposed to ensure that Mr. Ca'stle, Mr. Merriman, and Mr. and Mrs. Whitlow met these requirements. His decision did not supersede the terms of the policy, as his argument would require. Once again, Mr. Witasick's role as "group administrator" did not give him carte blanche to add whomever he chose to the firm's insurance policy; his role was to attest that the individuals submitted for coverage qualified under Anthem's terms.

Defendant then argues that, since Anthem accepted Zeke Ca'stle when he was listed as the "property manager," and since that term adequately described his position, they cannot now be heard to complain or allege that Mr. Ca'stle was fraudulently added. Even granting that Mr. Ca'stle was the property manager, this argument makes no difference to whether Mr. Ca'stle qualified as an "eligible employee" under the policy. Mr. Ca'stle was a property manager, but he was employed by the Witasicks *personally*, not by the firm. As such, he was not an "employee *of the group*." (Def. Ex. 55 (emphasis added).)

Defendant's final argument is that 18 U.S.C. § 1347 is written in the disjunctive "or," but the Grand Jury charged Mr. Witasick in the conjunctive "and," alleging that he violated both subsections 1 and 2 of § 1347. This argument also fails. Such a difference in the statute and the indictment is insignificant and does not merit dismissal. *See United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967) ("It is well settled that conjunctive indictment . . . permits disjunctive consideration of guilt . . . .").

## V.    MOTION FOR A NEW TRIAL IN THE INTERESTS OF JUSTICE

Finally, for Defendant's fourth motion [Docket No. 333], "[I] may vacate any judgment and grant a new trial if the interests of justice so requires.  If the case was tried without a jury, [I] may take additional testimony and enter a new judgment."  FED. R. CRIM. P. 33(a).  Unlike the other post-trial relief motions, when considering an "interests-of-justice" motion, I am not bound to view the evidence in the light most favorable to the government; rather, I may actively weight the credibility of witnesses in my determination.  *See United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985) ("When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial.").

Defendant's motion here rests on the public policy argument that Mr. Witasick was merely trying to do that which Congress and the President are trying to achieve— ensure that all his employees had health care.  *See* H.R. 3590, 111th Cong. (2010) (enacted).  Furthermore, Defendant argues that 18 U.S.C. § 1347 applies to a person attempting to have his insurance cover a test or treatment that is not covered by his policy, and such is not the case here.  Mr. Witasick paid every premium for his employees and never attempted to have Anthem pay for a test or procedure that was not covered by the policy.  There was no harm to Anthem; they were paid the premiums.  As such, justice demands that Mr. Witasick should be granted a new trial.

This argument is not compelling.  First of all, regardless of the actions of Congress and the President, 18 U.S.C. § 1347 is still the law, and I am duty-bound to interpret and apply the law to the facts presented.  Unless and until the statute is repealed, I will do exactly that.  Secondly, whether or not a statute is "intended" to cover some

actions does not preclude it from applying elsewhere. As I have stated, Mr. Witasick's actions fulfilled every element of the statute, and his conviction is sound. Finally, the fact that all of the premiums were paid is irrelevant. Mr. Witasick devised a scheme and caused ineligible persons to be added to the firm's health insurance policy. The painfully obvious goal was to have Anthem pay these individuals' claims when they arose. Furthermore, Mr. Witasick was not charged with committing a fraud; he was charged with executing a *scheme* to defraud. Whether or not that scheme succeeds is irrelevant. An unsuccessful scheme is a scheme nonetheless.[16] The statute criminalizes executing or attempting to execute a scheme or artifice to defraud, and Mr. Witasick did exactly that. Therefore, I will deny Defendant's motion for a new trial in the interests of justice.

## VI.    CONCLUSION

For the reasons stated in open court and those contained herein, I will **DENY** the Defendant's four post-trial motions. The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 22nd day of March, 2010.

s/Jackson L. Kiser
Senior United States District Judge

---

[16] *Cf. United States v. Mitchell*, 165 F. App'x 821, 824 (11th Cir. 2006) (unpublished) ("The scheme to defraud must consist of actions that *would have* deceived a reasonably prudent person, committed with a conscious, knowing intent to defraud." (emphasis added)); *United States v. Zehrbach*, 98 F. App'x 211, 217 (4th Cir. 2004) (unpublished) ("A scheme to defraud, whether successful or not remains within the purview of the mail fraud statute as long as the jury finds an intent to obtain money or property from the victim of Defendant's deceit."); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1576 (11th Cir. 1988) (noting that, in a prosecution for mail fraud, the success of the scheme to defraud was irrelevant); *United States v. Keane*, 852 F.2d 199, 205 (7th Cir. 1988) ("But the mail fraud statute proscribes fraudulent *schemes*; it does not confine penalties to those whose schemes succeed . . . ."); *Ward v. United States*, 845 F.2d 1459, 1462 (7th Cir. 1988) ("[T]he mail fraud statute punishes the scheme to defraud, and does not require that the intended victim actually have been defrauded . . . ."); *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (noting that the mail fraud statute covers a scheme whose goal is fraudulent); *United States v. Dial*, 757 F.2d 163, 179 (7th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985) (holding that the mail fraud statute "punishes the scheme to defraud rather than the completed fraud itself.").