IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 4:07-cr-00030-001 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KEVIN J. WITASICK, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

On May 20, 2013, Defendant Kevin J. Witasick ("Defendant") filed a Motion for a New Trial [ECF No. 402] ("Motion") pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In his Motion, Defendant requested a new trial on the grounds of newly discovered evidence and ineffective assistance of counsel. On March 14, 2014, I heard oral arguments on Defendant's Motion. Having thoroughly reviewed the briefs, the record, and the arguments of all parties, the matter is now ripe for decision. For the reasons stated below, I will **DENY** Defendant's Motion.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

*A. Underlying Criminal Action*

In the Indictment and at trial, the Government alleged that Defendant, who was an attorney with the Arizona law firm of Witasick, Parker and Thompson, owned Stoneleigh, a historic property in Stanleytown, Virginia.[1] While Defendant operated a branch office of the Arizona firm out of Stoneleigh, he simultaneously undertook to remodel a vast portion of the interior of Stoneleigh. Renovations included turning the first floor into an appropriate office for his law practice, and remodeling the other two floors as a private residence for his family. In 1999, Defendant claimed on his tax return that 75% of the funds he spent remodeling and

---

[1] Constructed between 1929 and 1932, Stoneleigh was the home of former Virginia Governor Thomas B. Stanley. Defendant and his wife, Whitney Witasick, purchased the home in 1998 with the intention of converting one level of the mansion into a home office for a Virginia branch of Defendant's law practice, and remodeling the remaining two levels as a private residence for Defendant, his wife, and their children.

renovating Stoneleigh were deductable as business expenses, meaning that he claimed that 75% of the renovation costs were spent solely on the home office. In 2000, he claimed that 100% of the expenses were spent on the home office, despite the extensive remodeling done to the private residence. He filed no tax return in 2001. A jury found that the percentages Defendant identified on his tax returns vastly overstated the actual percentage of remodeling costs attributable to his home office renovation.[2] The Government alleged a resulting tax loss of over $100,000.

The Government also alleged[3] that Defendant falsely claimed that Stoneleigh's "property manager" (and Defendant's personal trainer), Zeke Ca-stlé, was an employee of his firm's Virginia office, and that Defendant listed Ca-stlé as an employee on his firm's group health insurance plan. Although not expressly listed in the Indictment,[4] the Government alleged—and offered evidence at trial—that Witasick also had his nanny, his personal chef, and his groundskeeper added to the law firm's health insurance plan. Because Defendant employed these individuals personally and not through the law firm—the entity which offered the health insurance plan—I convicted Defendant of health insurance fraud. The Government proved that Defendant falsely claimed these individuals qualified as firm employees under the terms of the policy, thereby fraudulently obtaining health insurance benefits for them.

---

[2] The Government alleged that although Defendant claimed that 75% of the funds expended in 1999 and 100% of the funds expended in 2000 on remodeling Stoneleigh were used to convert a single level into the home office, a majority of the remodeling expenses were actually spent on remodeling the private residence.

[3] The charges of tax evasion and tax perjury were tried to a jury January 26–February 3, 2009. The charge of health care fraud was severed and tried separately in a bench trial on November 2−5, 2009.

[4] The Indictment alleged that Defendant "secured and attempted to secure group health insurance coverage on the Witasick, Parker and Thompson group policy for ZC, who was employed to perform personal tasks for KEVIN J. and WHITNEY S. WITASICK." (Indictment, Count 9, ¶ 2 [ECF No. 14].)

*B. Procedural History*

Defendant's Motion stems from his 2009 criminal convictions. On February 3, 2009, a jury found Defendant guilty of the following charges: tax evasion for the 1999 and 2000 calendar years in violation of 26 U.S.C. § 7201; tax perjury for the 1999 and 2000 calendar years in violation of 26 U.S.C. § 7206(1); and willful failure to file a tax return in 2001 in violation of 26 U.S.C. § 7203. (See Verdict Form [ECF No. 215].) A separate charge of conspiracy was dismissed at the close of the Government's evidence.

The two remaining counts of the Indictment were severed and tried in a bench trial. (See Order [ECF No. 117].) On November 5, 2009, I found Defendant guilty of committing health insurance fraud in violation of 18 U.S.C. § 1347, but not guilty of mail fraud in violation of 18 U.S.C. § 1341. (See Verdict Form [ECF No. 319].) On May 20, 2010, I sentenced Defendant to 15 months of active incarceration and two years of supervised release. (See Judgment [ECF No. 377].) Defendant made a timely appeal to the United States Court of Appeals for the Fourth Circuit, which affirmed the convictions and the sentence. (See Judgment of USCA [ECF No. 398].) On May 20, 2013, Defendant filed the instant Motion seeking a new trial. (See Mot. for New Trial [ECF No. 402].) Defendant has been released from prison and is currently serving his term of supervised release in New Jersey.

**II.    STANDARD OF REVIEW**

Rule 33 permits the trial court to grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33(b) contemplates two bases for a new trial. First, a defendant can move for a new trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). In the alternative, a defendant can move for a new trial for "any reason other than newly discovered evidence." See Fed. R. Crim. P. 33(b)(2). Under either basis, however, the

district court "'should exercise its discretion to grant a new trial sparingly,' and . . . should do so 'only when the evidence weighs heavily against the verdict.'" United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (quoting United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997); United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985)).

To receive a new trial based on newly discovered evidence, a defendant must show the following: (1) the evidence is, in fact, newly discovered; (2) the defendant used due diligence to uncover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at a new trial. United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000). The defendant must meet all five factors in order to receive a new trial. United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989).

A defendant can also request a new trial under Rule 33(b)(2) based on ineffective assistance of counsel. See United States v. Russell, 221 F.3d 615, 619 (4th Cir. 2000); see also United States v. Smith, 62 F.3d 641, 648 (4th Cir. 1995). In that situation, courts apply the familiar Strickland standard for ineffective assistance of counsel. See Russell, 221 F.3d at 620 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To that end, a defendant must satisfy Strickland's two-prong test. First, a defendant must show that that his counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 694. Second, a defendant must also show that he was "prejudiced" by his counsel's errors; that is, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.

### III. DISCUSSION

Defendant alleges that a new trial is warranted with respect to all charges because of both newly discovered evidence and ineffective assistance of counsel.

### A. *A Note on Timeliness*

Before addressing the merits, it is worth noting that, although the Government failed to raise an objection, this Motion is untimely in all respects. Rule 33 sets forth two different deadlines. If a defendant bases his motion on newly discovered evidence, the defendant must file the motion within three years of the verdict. See Fed. R. Crim. P. 33(b)(1). If a defendant bases his motion on any other grounds, *e.g.*, ineffective assistance of counsel, he must file the motion within fourteen (14) days of the verdict. See Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilt."). To calculate either deadline, however, the time runs from the *return of the verdict or finding of guilt*, not from the date of the sentence or final judgment. See Rule 33(b)(1), (b)(2); see also United States v. Barraza, 365 F. App'x 526, 531 (4th Cir. 2010) (unpublished); United States v. Camacho, 370 F.3d 303, 307-09 (2d Cir. 2004) (discussing the rationale behind Rule 33's deadline).

Here, the jury returned its verdict on the tax charges on February 3, 2009, and I found Defendant guilty of health care fraud on November 5, 2009. It is worth noting that the bench trial only concerned health care fraud, and despite Defendant's claims that he has "new evidence" regarding these charges, he has never submitted competent evidence on which to base this argument.[5] As such, Defendant's Motion is untimely; its May 20, 2013, filing date fails to

---

[5] In a last-minute brief filed on March 13, 2014, Defendant offered an unsigned declaration of Larry Dragiewicz, an insurance broker in Arizona. (See Def.'s Br. in Supp. of Rule 33 Mot., Ex. C, March 13, 2014 [ECF No. 415] (hereinafter "Def.'s Br.").) According to Dragiewicz, Defendant only contacted him in January of 2014 regarding his declaration. (See id. ¶ 2 ("I was contacted last week . . . ."), ¶ 15 (listing an "execution date" of February 11, 2014).) As stated infra page 6, unsigned declarations will not be afforded any weight.

comply with the applicable fourteen-day and three-year deadlines.[6]

While it is clear that Defendant's Motion is untimely, the Government failed to raise this issue and has thus forfeited the defense. See Eberhart v. United States, 564 U.S. 12, 18 (2005) (holding that Rule 33 is a non-jurisdictional claim-processing rule that may be forfeited if the government fails to raise the issue); see also Rice v. Rivera, 617 F.3d 802, 809 (4th Cir. 2010). Accordingly, I will proceed to the merits of Defendant's motion.[7]

### B. Newly Discovered Evidence

#### i. The Unsolicited Witness

With respect to the tax evasion and tax perjury charges, Defendant alleges that an unsolicited witness has come forward with previously unknown evidence that is germane to the tax crimes. This evidence—which Defendant admits is an unsigned, and therefore improper, declaration from Richard Avellone, CPA—allegedly shows that a Government witness, Defendant's former CPA Charles Estes, should not be trusted. Additionally, Avellone asserts that Defendant did not provide Estes with an inflated percentage of that portion of the Stoneleigh renovation costs that he used for the home office section of the home in either 1999 or 2000. Instead, Avellone maintains that Defendant gave Mr. Estes all of the necessary and proper information to prepare accurate tax returns for 1999, 2000, and 2001.

---

[6] On the tax perjury and tax evasion charges, the fourteen-day time limit expired on February 17, 2009, and the three-year limit expired on February 3, 2012. For the health insurance fraud charge, the fourteen-day limit expired on November 19, 2012, and the three-year limit expired on November 5, 2012. Defendant filed the present motion on May 20, 2013, three years from the date of his ***sentencing***.

[7] While the Supreme Court's holding in Eberhart is clear, the Fourth Circuit has held in several *per curiam* opinions that Rule 33 remains jurisdictional in nature. While most of these Fourth Circuit cases are non-binding, unpublished decisions, it is worth noting the inconsistency in the law. Compare Rice, 617 F.3d at 809 (noting that Eberhart clearly held that Rule 33 is non-jurisdictional and can be waived), with United States v. Barbee, No. 12-4197, 2013 WL 1849135, at *1 (4th Cir. May 3, 2013) (per curiam) (unpublished) (noting that "the time limits of Rule 33 are jurisdictional"), and United States v. Swinson, 243 F. App'x 760, 763 (4th Cir. July 5, 2007) (per curiam) (same).

This evidence is not persuasive. First, it is an unsigned declaration that has no evidentiary force or value. I cannot and will not accept the word of a purported witness who neither testifies in open court to his new assertions, nor will consent to signing a declaration under the penalties of perjury. See 28 U.S.C. § 1746 (2013). Moreover, the declaration was clearly drafted by Defendant and submitted to the witness for approval; the evidence Defendant submitted establishes that the witness "did not agree" with some of the factual assertions made in prior drafts of the statement, and that others were only "partially true." (See Def.'s Br. Ex. C.) Without knowing that the witness completely ascribes to the final form, I will not accept it as evidence.

Second, the unsigned declaration attempts to impeach a government witness—Charles Estes—with allegations of wrongdoing that occurred *after* the trial. Defendant argues, curiously, that a jury should have the right to examine Estes's testimony in light of the unproven allegations of wrongdoing, even though the allegations concern Estes's business dealings with Avellone in the years after Defendant's conviction. To permit such evidence to upset a jury's verdict would leave every criminal case open and subject to reversal until all government witnesses have passed away.

Third, the allegations against Estes are nothing more than unsubstantiated assertions. As far as I know, Estes has not been charged with, let alone convicted of, any crime. The purported evidence is improper character evidence, and is prohibited by Federal Rules of Evidence 608 and 609. For these reasons, Defendant's arguments relying on Avellone's declaration cannot and will not be considered.

Moreover, even if I considered the substance of Avellone's claims about Defendant's forthrightness with Estes regarding the renovation expenses, that argument was rejected by a

jury. It does not qualify as "newly discovered" evidence under any standard. Estes was subject to cross-examination at trial, and there is no evidence that Avellone and his connection as Estes's business partner was unknown to Defendant or that Defendant was somehow prevented from securing his testimony. See United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000) (noting that "newly discovered evidence" must, in fact, be newly discovered, not cumulative, and that a defendant must have exercised due diligence to uncover it prior to trial). As such, there is no newly discovered evidence.

    ii.    *The "Stolen" Tax Evidence*

Defendant also argues that documents that he needed to prepare his defense against the tax charges were "taken" from his Arizona law office by his law partners. (See Def.'s Rule 33 Mot., May 20, 2013, pg. 2 [ECF No. 402].)[8] He claims:

> [Within three months] of the theft of these records, the Witasicks received their target letters from the Government [sic]. The government then spent the next four years conducting its investigation against the Witasicks, before actually indicting them in October of 2007. During this period of time the Witasicks had to attempt to reconstruct their records from a variety of sources for use in their defense.

(Id. at 10.) Defendant argues that this evidence was not available prior to trial, and that he used due diligence to uncover the evidence. Interestingly, Defendant does not assert that the records were damaged or destroyed; he merely maintains that they were in the possession of his former law firm. He does not indicate why he was unable to subpoena or otherwise procure these "crucial business records for the 1999, 2000, and 2001 tax years prosecuted by the government."

---

[8] "Towards the end of those 25 months [that Mr. Witasick was disabled and his partners were administratively running his Arizona law office], in August, 2011, while the Witasicks were out of the state on vacation, Mr. Parker and Ms. Russell-Drey were responsible for taking all of the Witasick's [sic] personal and business records with them, when they moved from the office. All of the computer records and the backup hard copies were taken, as was the entire computer system. These records were never returned to the Witasicks. Taken were crucial business records for the 1999, 2000, and 2001 tax years prosecuted by the government." (Def.'s Rule 33 Mot., pg. 2.)

(Id. at 2.) Moreover, Defendant admits he was aware the evidence existed prior to trial. Therefore, he is unable to show that the evidence is, in fact, newly discovered, or that he exercised due diligence to secure the new evidence. Under the applicable standard of review, Defendant has not met his burden to show that he is entitled to a new trial on the basis of newly discovered evidence.

      iii.    *The Handwriting Expert*

With respect to the charge of health insurance fraud, Defendant claims that he learned, after the conclusion of his trials, that the health insurance application used to convict him had been materially altered. To support his assertion, Defendant allegedly engaged a forensic handwriting expert who reviewed the health care application and concluded that the form was altered and that Defendant did not make the alterations.[9] According to Defendant, the handwriting expert was willing to testify to the following at his trial:

> Among other alterations, the name of the policy insured had been altered, as had the job titles of some of the insured employees. These were material alterations, as the identity of the named policy insured and the nature of the insured to certain of the insured's employees were the seminal issues identified by the Court as concerns Mr. Witasick's conviction in the health care fraud trial.

(Def.'s Rule 33 Mot., at pg. 8.) Defendant claims that, although the handwriting expert was engaged to offer opinions on these subjects, he never signed a final form of his declaration. Defendant does not even present a *draft* of the expert's proposed declaration; instead, he has presented e-mail chains outlining what he asserts the declaration would have said.

---

[9] The report is currently unavailable. According to Defendant, the report was damaged in Hurricane Sandy (a hurricane which devastated parts of New Jersey and the east coast <u>after</u> Defendant's trials). Defendant said that he would submit it to the Court when it is presentable. As it turns out, the final declaration of the handwriting expert was "not signed," and Defendant has instead offered e-mails between his trial counsel and the expert in support of his Motion.

There are numerous problems with this argument. First, by presenting e-mail chains between his original attorneys and the handwriting expert, Defendant establishes that the alleged evidence[10] is <u>not</u> newly discovered. Clearly, his attorneys were in possession of everything they needed to present the defense; thus, the evidence is not new. Moreover, the allegation that the application was "altered" is something that Defendant could have asserted as soon as the government provided the application as potential evidence during discovery. Defendant, presumably, would be able to recognize his own handwriting and/or material changes that someone made to the application after he approved it. Because Defendant was aware of everything necessary to assert the defense at trial, the evidence is not new.

Second, Defendant cannot show that, had the evidence been presented at trial, the outcome likely would have been different. In the trial on the charge of health insurance fraud, Defendant argued that, because he was the Plan Administrator, he was entitled to make the final determination of who was and was not an employee of the firm, and therefore <u>he</u> could decide who was qualified to be placed on the firm's health insurance plan. His new argument, however, does not alter or change the argument that he made and I rejected at trial. Whether or not the forms were altered, Defendant is incorrect in his argument that the decision was his to make. <u>See</u> <u>United States v. Witasick</u>, 443 F. App'x 838, 842 (4th Cir. 2011) (per curiam) (unpublished) ("Witasick's claim that his personal employee could be considered his firm's employee is without merit."). That argument was rejected and he was accordingly convicted. Nothing he presents now would change that outcome.

---

[10] Again, the "evidence" he presents is not the evidence he needs. He has presented unauthenticated e-mail chains which purport to establish what the handwriting expert would have said, had he signed a final declaration. The remainder of this section assumes, for the sake of argument, that the evidence is what Defendant claims it would have been.

Finally, the "evidence" he presents is not nearly as damning as he claims. According to the handwriting expert's e-mails, the expert was prepared to testify that:

> (1) it is probable that someone, not Defendant, changed the entry under the heading "Year Formed" from "1985" to "2000";
> (2) it is probable that someone other than Witasick prepared the hand written entries on the application; and
> (3) the Joseph Merriman employee application bears an alteration on the Job Title entry line.

(Def.'s Rule 33 Mot. Ex. 5 pg. 3.) Because none of these issues were in dispute at the trial, however, the evidence is not material. See United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000). It is obvious on the face of the health insurance applications that there was an alteration to the year formed and that the Merriman application contained a change. But Defendant's position was always that, regardless of what was on the application, he was entitled to make the final decision on who was and was not to be covered under the firm's insurance policy. Therefore, his defense did not depend on whether the applications had been altered in regards to inconsequential details.

Likewise, there is no prejudice associated with this evidence. See Lofton, 233 F.3d at 318 (noting that a defendant must show that the new evidence would probably result in an acquittal at a new trial). Defendant argues that his personal employees' applications were "altered"; he does not say when—before or after he signed the forms attesting that they qualified to be placed on the firm's insurance plan—the alterations occurred. Therefore, it is equally as possible that the applications were "altered" before Defendant signed them. If they were, then the argument would have absolutely no bearing at trial because Defendant would have approved the applications with full knowledge of the changes. Therefore, Defendant has not shown the requisite prejudice or materiality to warrant a new trial.

*iv.     The Catch-All Argument*

In order to avoid denial of his Motion on grounds that he did not exercise the necessary diligence to obtain the evidence, Defendant asserts that, during the pre-indictment investigation, many of his personal records were damaged in a house fire when firefighters hosed down the room in which the files were kept. He also claims that the documents were further damaged by Hurricane Sandy. Since these incidents, Defendant maintains that he has been diligently attempting to rehabilitate the documents for use.

The problem with this argument is Defendant admits elsewhere that the majority of these files were in possession of his law firm as well—albeit he alleges the firm "stole" the documents. Defendant does not state why the documents—the nature of which he does not disclose—could not be subpoenaed from the firm, why his attorneys did not maintain independent records, or why this argument was never asserted at trial as the basis of a motion to continue. Even if I conclude that Defendant exercised due diligence (which is debatable), Defendant has not established the materiality of these documents. Likewise, because the documents were in his possession before Defendant was indicted, he has admitted that the evidence is not "new." As such, he has not established that a new trial is appropriate.

C. *Ineffective Assistance of Counsel*

Defendant claims that a new trial is necessary because, *inter alia*, Defendant had ineffective assistance of counsel, which affected both the tax and health insurance fraud trials.[11]

---

[11] Although Defendant makes this assertion, he fails to state any alleged deficiency on the part of Patrick M. Cleary, Esq., the attorney who tried Defendant's health insurance fraud. The closest Defendant comes to making an ineffective assistance of counsel claim regarding the second trial is the assertion, in Donald Kingett's declaration, that although he paid Joe Lawless to represent him in both trials, Lawless withdrew as counsel after the first trial. In his declaration, Donald Kingett states:

> [Lawless] completely failed to put on any defense at all as concerns the
> second insurance related charges trial, even though he had been paid in

In order to succeed on an ineffective assistance of counsel claim, Defendant must establish that his trial counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 694 (1984). Additionally:

> [Defendant must show] 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

Harrington v. Richter, 131 S. Ct. 770, 787-88 (2011) (quoting Strickland, 466 U.S. at 687, 693-94). Moreover, there is a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance, . . . [and Defendant's] burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" Id. at 787 (quoting Strickland, 466 U.S. at 687-89).

With respect to the tax charges, Defendant claims that his first attorney, Joseph Lawless, Esq., failed to put on evidence that Defendant had a complete defense to the tax charges. Specifically, Defendant claims that Donald Kingett, CPA, met with Lawless prior to the first trial and advised Lawless that Defendant owed no tax to the government in either 1999 or 2000.

---

full to put on that defense, and never refunded any of that money to Mr. Witasick, despite Mr. Witasick's request that he do so, and with the knowledge that his failure to represent Mr. Witasick at that second trial or to refund money to Mr. Witasick so that a real, substantive defense could be put on at that second trial, would most likely result in Mr. Witasick's conviction on that one insurance count on which he was solely charged.

(Def.'s Rule 33 Mot. Ex. A ¶ 59.) Defendant makes the novel argument that Joe Lawless's performance was deficient because he did not perform at all. Interestingly, although Defendant makes this argument (through Kingett), Patrick Cleary is the only attorney who secured an acquittal for Defendant on any charges. Insofar as Defendant makes an argument that Lawless was deficient for refusing to represent him, that argument is meritless. Any claims between Defendant and Lawless sound in contract, not the Sixth Amendment.

Kingett allegedly told Lawless to use a forensic CPA to transform Kingett's analysis into completed tax returns. Kingett asserts in his declaration that Lawless ignored his recommendations and failed to conduct any follow-up investigation after being provided with this information. Defendant argues that the alleged ineffectiveness of his attorney's actions is bolstered by the fact that his second attorney, Patrick Cleary, actually called Kingett and a forensic tax expert to testify at the sentencing hearing. At sentencing, Kingett testified that Defendant owed no taxes, but the argument was too late to have any effect.

It is true that, in order to prove tax evasion, the Government must show that "a substantial tax deficiency existed." United States v. Wilson, 188 F.3d 228, 236 (4th Cir. 1997). As such, tax loss is an essential element of the crime and the Government must prove it beyond a reasonable doubt. See Boulware v. United States, 552 U.S. 421, 424 (2008). To show a tax deficiency, the government must first show that the taxpayer had "unreported income, and second, that the income was taxable." United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). While the government does not need to prove the precise amount of the tax due and owing, see United States v. Citron, 783 F.2d 307, 314-15 (2d Cir. 1986), the Government must show that the "defendant owe[d] more federal income tax for the applicable tax year than was declared due on the defendant's income tax return." United States v. Kayser, 488 F.3d 1070, 1073 (9th Cir. 2007).

Defendant is also correct that he cannot be found guilty of tax evasion if he can show that he was owed a refund for the applicable tax years. Put another way, if Defendant's tax returns, perfectly completed and including <u>all</u> applicable deductions,[12] do not <u>increase</u> the amount of tax

---

[12] "All applicable deductions" would include deductions Defendant chose not to take in his filed tax returns. See United States v. Bishop, 264 F.3d 535, 550 (5th Cir. 2001).

owed to the government, or if it entitles him to a tax refund, there is no tax loss. In United States v. Bishop, the Fifth Circuit said:

> The government must demonstrate the existence of a deficiency beyond a reasonable doubt, but need not prove the extent of the deficiency with mathematical certainty. There is no deficiency in the absence of a showing that the government is actually due a tax in excess of that reported. Therefore, undeclared deductions, credits, losses carried over from prior years, and so on, should be considered when calculating the deficiency.

264 F.3d 535, 550 (5th Cir. 2001) (internal citations omitted). Defendant's only witness, CPA Donald Kingett, says that Defendant is actually due a refund, and therefore had an absolute defense to the tax charges.

There are numerus problems with Defendant's argument. First, despite his claim that Kingett's declaration absolves him of the "tax charges," Defendant's argument would have no effect on his convictions for tax perjury.[13] Kingett asserts that Defendant had an absolute defense to the "tax charges" because the government cannot actually show a tax loss. While Kingett is correct that tax loss is a necessary element of tax evasion, the argument that lack of a tax loss defeats the tax perjury charges is simply false. The reason is obvious: tax perjury can be accomplished without showing a tax deficiency. To prove a violation of 26 U.S.C. § 7206(a), tax perjury, the Government must prove that: "(1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996). The jury determined that Defendant lied on his taxes by overstating the percentages of

---

[13] Defendant's argument would have no bearing on the charges of tax perjury because tax loss is not an element of tax perjury. While the defense raised would have applied to the charges of tax evasion, Defendant's arguments regarding the defense and his trial counsel's performance are rejected for the other reasons stated *infra*.

remodeling costs under the home business deduction. Whether Defendant is actually owed a refund is immaterial; when he willfully filed taxes that contained false information, the crime of tax perjury was complete. Therefore, Defendant's contention that this defense makes the "tax crimes" a legal impossibility is demonstrably wrong—tax perjury is complete without showing a tax loss.

Second, under Strickland, Defendant's first burden is to show deficient performance on the part of his trial counsel. Defendant asserts that his attorney, Joe Lawless, was presented with evidence that would result in an acquittal, but failed to present it. This, however, is a simplistic interpretation. At trial, Defendant's position was that he gave his accountant the relevant information and the accountant improperly calculated his business deductions. His trial defense was that he did everything properly.

Clearly, the jury did not accept this argument and believed Defendant's accountant's testimony when he testified that Defendant told him what percentages of the remodeling costs to claim as business expenses. Defendant now claims that, although he did not do everything correctly and his tax returns were actually misleading, his lawyer was constitutionally deficient because Defendant could have claimed other deductions that would have entitled him to a refund. These defenses are contradictory, in that one requires a jury to believe Defendant, and the second admits that he misled his accountant.[14] Because failure to present an alternate defense that is "inconsistent with [the] defense that he did not commit the crime at all" is not ineffective assistance of counsel, see Vinson v. True, 436 F.3d 412, 419-20 (4th Cir. 2006), Defendant cannot carry his burden to establish deficient performance.

---

[14] This defense would necessarily require Defendant to admit that he knowingly lied on his filed tax returns, therefore establishing every element necessary to sustain a conviction for tax perjury.

It may be true that, if Joe Lawless had failed to uncover the evidence, or failed to investigate a defense to the crime, he would have been ineffective as counsel. But that is not what Defendant claims. Defendant claims that Kingett presented Lawless with everything needed to present the defense; he simply did not do it. While one may argue whether the strategy was correct, it is difficult to say that Defendant has "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

The third problem with Defendant's argument is that there is no actual evidence to support it. Defendant offers a solitary witness who says, in essence, that Defendant's properly completed tax returns would entitle him to a refund. That is far short of showing that Defendant is actually entitled to a refund. To do that, and to overcome the substantial burden required by Strickland to show that the outcome of his trial likely would have been different, Defendant needs to show, at a minimum, that the deductions he claims he could have taken but did not are legitimate deductions supported by evidence. Defendant, however, offers nothing to support Kingett's conclusion. Defendant does not present a completed tax return with supporting documentation, or even documents from which the court could deduce what such a completed return would say.

Moreover, Defendant has not and cannot demonstrate prejudice based on the evidence adduced. It is impossible to determine whether the outcome of the trial "probably" would have been different when I cannot make an independent determination regarding the veracity of an alleged defense. The existence of a defense is very different from the efficacy of that defense. Put another way, a defense that exists is not necessarily a defense that wins. As such, Defendant's argument must be rejected.

## IV. CONCLUSION

The vast majority of Defendant's "new evidence" arguments lack the specificity or foundation necessary to evaluate whether Defendant is able to carry his burden. The only evidence he does produce is not new, and the failure to present that evidence at trial was not prejudicial. As such, his Motion for a New Trial on the basis of newly discovered evidence will be denied.

Likewise, Defendant's claim that Joe Lawless provided constitutionally deficient representation by failing to put on evidence of Defendant's "complete defense" to the tax charges is flawed for numerous reasons. First, there is no evidence of what a properly completed tax return would be for tax years 1999 and 2000, meaning Defendant has not shown that the "defense" he invokes would apply to this case. Second, the "defense" would not have affected the charges of tax perjury. Finally, counsel's decision was likely a tactical one, and would not constitute deficient performance that fell below an objective standard of reasonableness. For these reasons and those mentioned above, Defendant's Motion for a new trial on the basis of ineffective assistance of counsel will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record and to Defendant.

Entered this 7th day of April, 2014.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE